**BRYAN CAVE LLP**
Julie E. Patterson, California Bar No. 167326
Julie W. O'Dell, California Bar No. 291083
3161 Michelson Drive, Suite 1500
Irvine, CA  92612-4414
Telephone:  (949) 223-7000
Facsimile:   (949) 223-7100
E-Mail:   jepatterson@bryancave.com
              julie.odell@bryancave.com

Attorneys for Defendant
ADECCO USA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAITLYN SHEPARDSON, individually, and on behalf of other members of the general public similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ADECCO USA, INC., and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO.   3:15-cv-5102 <br><br> (San Mateo Case No. CIV 535091) <br><br> **CLASS ACTION** <br><br> **NOTICE OF REMOVAL BY DEFENDANT ADECCO USA, INC. PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453 (DIVERSITY OF CITIZENSHIP)** <br><br> Complaint Filed: August 18, 2015 <br> FAC Filed:         October 2, 2015 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Adecco USA, Inc. ("Adecco") hereby removes to this Court the state court action described below.

## BACKGROUND

1. On August 18, 2015, Plaintiff Kaitlyn Shepardson ("Plaintiff") filed a putative class action lawsuit in the Superior Court of the State of California, County of San Mateo, titled *Kaitlyn Shepardson, individually, and on behalf of other members of the general public similarly situated v. Adecco USA, Inc., and DOES 1 through 100, inclusive*, San Mateo County Superior Court Case No. CIV 535091 (the "State Court Action"). Declaration of Julie E. Patterson ("Patterson Decl.") ¶ 2.

2. As it was filed after February 18, 2005, the State Court Action was commenced after the effective date of the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2 (enacted Feb. 18, 2005), codified at 28 U.S.C. §§ 1332(d), 1453, and 1711-1715.

3. On October 2, 2015, without serving the Complaint, Plaintiff filed a First Amended Complaint. The proof of service attached to the Summons for the First Amended Complaint indicates that Adecco was personally served on October 8, 2015. Patterson Decl. ¶ 3. A true and correct copy of the Complaint, First Amended Complaint, Summons, and all other documents served on Adecco or filed in the State Court Action are attached to the Patterson Declaration as Exhibit 1. No other pleadings, process, or orders have been served on Defendant or filed in the Action. *Id.* Because this Notice of Removal is filed within thirty days of service of the First Amended Complaint and Summons upon Adecco, it is timely under 28 U.S.C. § 1446(b).

4. On November 5, 2015, Adecco filed and served its Answer to

1  Plaintiff's First Amended Complaint. *Id.* ¶ 4. A true and correct copy of the
2  Answer is attached to the Patterson Declaration as Exhibit 2.

3      5.    In the State Court Action, Plaintiff asserts claims against Adecco for
4  purported wage-and-hour violations committed against all current and former
5  hourly "Store Operators" or persons who held similar job titles or performed
6  similar job duties who worked for Adecco in California. The alleged wage and
7  hour violations include claims for failure to pay all wages owed, failure to pay at
8  least minimum wage for all hours worked, failure to provide rest breaks, failure to
9  provide the minimum number of hours on days employees reported to work but
10 were sent home, failure to reimburse for business expenses, failure to pay all wages
11 upon termination, failure to provide accurate wage statements, unfair competition,
12 and penalties pursuant to California Labor Code section 2699. *See* First Amended
13 Compl. ¶¶ 13, 21-40, 48-55, 60-64, 67-70, 74-77, 79.

14     6.    Plaintiff seeks to represent a putative class—which Adecco denies can
15 be certified as such—that includes herself and all other current and former hourly
16 "Store Operators" or persons who held similar job titles or performed similar job
17 duties who worked for Adecco in California since August 18, 2011, four years
18 preceding the filing of the Complaint. Compl. ¶ 13.

19 **REMOVAL – CAFA**

20     7.    Congress enacted the CAFA on February 18, 2005 to "expand
21 substantially federal court jurisdiction over class actions." S. Rep. No. 109-14,
22 *43, as reprinted in 2005 U.S.C.C.A.N. 3, **41, 109 S. Rpt. 14. Its provisions
23 "should be read broadly, with a strong preference that interstate class actions
24 should be heard in a federal court if properly removed by any defendant." *Id.; In*
25 *re Textainer Partnership Sec. Litig.,* 2005 U.S. Dist. LEXIS 26711, *10 (N.D. Cal.,
26 Jul. 27, 2005) (quoting 151 Cong. Rec. H723-01, H-727 (2005) (statement of Rep.
27 Sensenbrenner)).

28     8.    Pursuant to the CAFA, when the number of putative class members

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

defined in a complaint exceeds 100, a federal district court has original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

9. Further, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" the $5,000,000 requirement, 28 U.S.C. § 1332(d)(6), thereby "abrogat[ing] the rule against aggregating claims." *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 571, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005).

10. The requirements for this Court's exercise of diversity jurisdiction over Plaintiff's purported class action are clearly and unequivocally satisfied in this case.

**Putative Class Numerosity**

11. A threshold requirement of the CAFA is that there must be at least 100 putative class members. *See* 28 U.S.C. § 1332(d)(5)(B). The requirement is readily met here. First, the First Amended Complaint directly alleges that "the class is estimated to be greater than one hundred individuals." First Amended Compl. ¶ 15.a. Company records show that Adecco first started assigning temporary staffing employees to work as non-exempt GSX Store Operators in California on July 9, 2012. Between July 9, 2012 and November 2, 2015, Adecco employed an estimated 1,202 persons who had assignments as non-exempt GSX Store Operators in California. *See* Declaration of Kristy Willis ("Willis Decl.") ¶ 7.

**Diversity of Citizenship**

12. For purposes of establishing federal jurisdiction, the CAFA requires only minimal diversity; that is, at least one purported class member must be a citizen of a state different from the state of citizenship of any named defendant. 28

U.S.C. § 1332(d)(2)(A).  As explained below, Plaintiff is a citizen of a state different from that of Adecco.  Hence, the CAFA's diversity of citizenship requirement is satisfied here.

13. Plaintiff was, at the time of the filing of the State Court Action, a citizen of the State of California.  Plaintiff alleges she is a resident of California.  First Amended Compl. ¶ 4.  Plaintiff's personnel records reflect that the residential address she provided to Adecco is 1267 66th Street, Emeryville, California 94608.  Willis Decl. ¶ 5.  A party's residence is prima facie proof of that person's domicile, which once established, it presumptively continues unless rebutted with sufficient evidence of change.  *See Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571(5th Cir. 2011

14. "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).  Both at the time the Action was commenced and presently, Adecco is a corporation organized under the laws of the State of Delaware.  Willis Decl. ¶ 2.  Under the "nerve center test," a principal place of business refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) ("principal place of business" means "the place where a corporation's officers direct, control, and coordinate the corporation's activities.").  Both at the time the State Court Action was commenced and presently, Adecco's principal place of business is the State of Florida, as this is where its high level officers, including its Chief Executive Officer, direct, control, and coordinate its activities.  Willis Decl. ¶ 3. Adecco's executive operations are managed from this location, including, but not limited to, those operations relating to administering company-wide policies and procedures, legal affairs, and general business operations.  *Id.*

15. Pursuant to 28 U.S.C. section 1441(b)(1), the citizenship of

1  defendants sued under fictitious names shall be disregarded for purposes of
2  establishing removal jurisdiction under 28 U.S.C. section 1332.  *See* 28 U.S.C. §
3  1441(b)(1); *Newcombe v. Adolf Coors Co.*, 157 F. 3d 686, 690-91 (9th Cir. 1998)
4  (in determining whether diversity of citizenship exists, only the named defendants
5  are considered).  Thus, the existence of Doe Defendants 1 through 100, does not
6  deprive this Court of jurisdiction.

7        16.    Because Plaintiff is a citizen of California, a different state than that
8  of Adecco, which is citizen of Delaware and Florida, the CAFA's requirement of
9  minimal diversity is satisfied here.  28 U.S.C. § 1332(d)(2)(A).

### Amount-in-Controversy

11        17.    Pursuant to the CAFA, the claims of the individual members in a
12  putative class action are aggregated to determine if the amount-in-controversy
13  exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  Congress
14  intended that federal jurisdiction properly be exercised under the CAFA "if the
15  value of the matter in litigation exceeds $5,000,000 either from the viewpoint of
16  the plaintiff or the viewpoint of the defendant, and regardless of the type of relief
17  sought (e.g., damages, injunctive relief, or declaratory relief)."  S. Rep. No. 109-
18  14, *42.

19        18.    The amount in controversy is determined by adding up the value of
20  the claim of each person who falls within the proposed class definition to
21  determine whether the resulting sum exceeds $5 million.  *Standard Fire Ins. Co. v.*
22  *Knowles*, 133 S. Ct. 1345, 1348 (2013);  *Rodriguez v. AT&T Mobility Services,*
23  *LLC,* 728 F.3d 975, 981 (9th Cir. 2013) ("*Standard Fire* instructed district courts to
24  look to the potential claims of absent class members, rather than plaintiff's
25  complaint.")  "To do so, district courts must necessarily 'look beyond the four
26  corners of the complaint' when the complaint alleges damages below the
27  jurisdictional minimum."  *Rodriguez,* 728 F.3d at 981 (quoting from the now
28  effectively overruled on other grounds *Lowdermilk v. U.S. Bank National Ass'n*,

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

479 F.3d 994 (9th Cir. 2007)).

19. In the Ninth Circuit, the level of proof required to satisfy the CAFA's amount-in-controversy requirement is a preponderance of the evidence. *Rodriguez, supra*, 728 F.3d at 981 (stating the preponderance of the evidence standard applies when the plaintiff does not plead a specific amount in controversy). To meet this standard of proof, the defendant must provide evidence that it is 'more likely than not' that the amount in controversy satisfies the federal diversity jurisdictional amount requirement." *Davis v. Chase Bank U.S.A., N.A.*, 453 F. Supp. 2d 1205, 1209 (C.D. Cal. 2006) (*citing Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676, 680 (9th Cir. 2001) (remaining citations omitted). This burden is not "daunting," as courts in this Circuit recognize that a removing defendant is not obligated to "research, state and prove the plaintiff's claim for damages." *Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515, *7 (E.D. Cal., Apr. 30, 2007); *Thomas v. Aetna Health of California, Inc.*, 2011 WL 2002515, *6 (E.D. Cal., June 2, 2011) ("requiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case."). Thus, "[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction." *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 447 (7th Cir. 2005).

20. In the State Court Action, Plaintiff seeks, on behalf of herself and on behalf of the putative class damages for unpaid wages, premium wages in the form of one hour of pay for each workday a rest period was not provided, statutory wage penalties for failure to pay all compensation owed on termination, restitution under California's Business & Professions Code section 17203, penalties pursuant to California's Labor Code section 2699, interest, costs, reasonable attorneys' fees and "such other and further relief as the court may deem just and proper." First Amended Compl., Prayer for Relief, pp. 16-19.

21.     Plaintiff seeks to represent a class of all current and former hourly "Store Operators" or persons who held similar job titles or performed similar duties who worked for Adecco within California from August 18, 2011 to the present. First Amended Compl. ¶ 13.

22.     Since Adecco was served with process in the State Court Action, Adecco conducted an analysis of its employment data regarding current and former employees who had assignments as non-exempt GSX Store Operators in California between July 9, 2012 and November 2, 2015. Willis Decl. ¶ 6. *See Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 985-86 (S.D. Cal. 2005) (the amount-in-controversy is properly evaluated based on the plaintiff's allegations and the defendant's own employment data). Adecco's calculation is conservative because it does not include an analysis for all claims alleged by Plaintiff, but as shown below, the jurisdictional amount is met.

23.     Adecco employed an estimated 1,202 persons who had assignments as non-exempt GSX Store Operators in California from July 9, 2012 to November 2, 2015. Willis Decl. ¶ 7.

24.     Plaintiff contends that Adecco required her and the putative class members "to work without compensating them for all hours worked in violation of California law." First Amended Compl. ¶ 48. Plaintiff further contends that Adecco failed to pay at least minimum wage for all hours worked, *Id.* ¶ 26, and failed to pay overtime wages for all overtime hours worked, *Id.* ¶ 33. Plaintiff further claims that Adecco "engaged in a uniform policy and systematic scheme of wage abuse against [its] Store Operators." *Id.* ¶ 21. The statute of limitations for claims for unpaid wages is three years, *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal. 4th 1094, 1099, which is extended to four years where, as here, the plaintiff asserts an unfair business practices claim under California Business and Professions Code section 17200. Cal. B. & P. Code § 17208. Assuming, based on Plaintiff's allegations, that putative class members were deprived, on average, of

15 minutes of compensation at their regular rate for 20% of the total days worked during the four-year limitations period, a conservative estimate of the potential amount-in-controversy for this claim alone would be $151,323 exclusive of interest. Adecco's temporary staffing services employees worked an estimated 193,508 days during the class period. Willis Decl. ¶ 11. The estimated amount in controversy for Plaintiff's unpaid wage claims was calculated by using the employees' average hourly rate of $15.64 during the four-year limitations period and assuming just 15 minutes of unpaid wages for 20% of the total days the employees worked at their regular hourly rate (*i.e.,* 193,508 days worked x 20% x 0.25 hours (15 minutes/60 minutes) x $15.64 = $151,323). Based on these calculations, the total estimated amount in controversy for Plaintiff's unpaid claim is $151,323. *Id. See Rippee*, 408 F. Supp. 2d at 985-86 (S.D. Cal. 2005) (finding the defendant's calculation of potential overtime wages reasonable because it was based on the defendant's records of the actual number of employees and noting that the defendant assumed all of the members of the class worked overtime).

25. Section 5 of Industrial Welfare Commission Wage Order 4-2001 regarding reporting time pay provides:

> Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

8 Cal. Admin. Code § 11040(5) (A).

26. Plaintiff alleges she and the other putative class members "who were scheduled and required to work, were not put to work or furnished with less than half of his or her usual or scheduled day's work." First Amended Compl. ¶ 52.

Plaintiff further alleges that Adecco "intentionally and willfully failed to furnish the "usual or scheduled day's work," *id.* ¶ 53, and engaged in a "uniform policy and systematic scheme of . . . failing to pay the minimum required on days when they reported to work and were sent home," *id.* ¶ 21.  Plaintiff alleges that she and the other putative class members are entitled to recover from Adecco, "half the usual or schedule's day's work, but in no event for less than two hours nor more than four hours, at his or her regular rate of pay." *Id.* ¶ 55.  Adecco's GSX Store Operators were typically assigned to work eight hours per day.  Willis Decl. ¶ 8.  Adecco's GSX Store Operators worked an estimated 3,657 work days that were less than four hours during the class period.  Willis Decl. ¶ 9. Assuming, based on Plaintiff's allegations, that these short work days were the result of putative class members reporting to work but being sent home early, and assuming as Plaintiff alleges they were deprived of a minimum of two hours of pay at their regular rate of $15.64, a conservative estimate of the potential amount-in-controversy for Plaintiff's reporting time claim would be $114,390, exclusive of interest (3,657 days less than 4.0 hours x 2 hours of pay x $15.64 average regular rate = $114,390).

27.    Section 12 of Wage Order 4-2001 requires employers to authorize and permit employees to take rest periods at the rate of ten minutes net rest time for every four hour period of work, or major fraction of a four hour period.  8 Cal. Admin. Code § 11040(12)(A).  If an employer fails to provide a required rest period, the employer must pay the employee a premium payment in the form of one hour of pay for each day a required rest period is not provided.  *Id.* at (12)(B); *see also* Cal. Lab. Code § 226.7(c).  The statute of limitations for missed rest period claims is the same as a claim for unpaid wages, *Murphy, supra,* 40 Cal. 4th at 1114, which is extended to four years under California Business and Professions Code section 17200.  Cal. B. & P. Code § 17208.

28.    Plaintiff contends Adecco required Plaintiff and other putative class

members to work four or more hours without authorizing or permitting a required ten (10) minute rest period.  First Amended Compl. ¶ 60.  Plaintiff further alleges that Adecco "willfully required Plaintiff and other class members to work during rest periods and failed to pay Plaintiff and the other class members the full rest period premium for work performed during rest periods. *Id.* ¶ 61.  Plaintiff alleges Adecco engaged in a "uniform policy and systematic scheme . . . of failing to provide rest breaks as required under California law." *Id.* ¶ 21.  Plaintiff seeks to recover from Adecco one hour of pay at the employees' regular hourly rate for each day a required rest period was not provided. *Id.* ¶ 64.  The GSX Store Operators worked an estimated total of 189,851 work days of four hours or longer since July 9, 2012.  Willis Decl. ¶ 10.  Assuming, based on these allegations, that putative class members were not provided, on average, a rest period for 20% of the total work days of at least four hours during the four-year limitations period (equivalent to about one rest period per week), a conservative estimate of the potential amount-in-controversy for this claim would be $593,853 exclusive of interest.  This estimate was derived by multiplying the total number of work days of at least four hours worked by putative class members during the class period, which was estimated to be 189,851 x 20% x the employees' average hourly rate of $15.64.  Willis Decl. ¶¶ 8 and 10.  Based on these calculations, the estimated total amount in controversy for Plaintiff's rest period claim is $593,853.  *Id. See, e.g., Stafford v. Dollar Tree Stores, Inc.*, 2014 WL 1330675, *8 (E.D. Cal., Mar. 27, 2014) (finding reasonable an estimate of fifty percent of meal periods were missed based on the plaintiff's allegations that class members were "routinely" denied meal periods); *Oda v. Gucci America, Inc.*, 2015 WL 93335, *4 (C.D. Cal., Jan 7, 2015) (finding an assumption of a 50% violation reasonable); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 U.S. Dist. LEXIS 26545, *9-11 (C.D. Cal., Mar. 3, 2015) (finding an assumption of one violation per week reasonable).

  29. California Labor Code section 201 requires employers to pay

employees whose employment is discharged their final wages immediately upon discharge. Cal. Lab. Code § 201. California Labor Code section 202 separately requires employers to pay employees who voluntarily quit their employment all wages due within 72 hours (unless the employee has provided at least 72 hours' notice of his or her intention to quit, in which case their wages are due immediately at the time of quitting). Cal. Lab. Code § 202. California Labor Code section 203 provides that an employer who willfully fails to pay all wages due a terminating employee, as required under either Labor Code sections 201 or 202, shall be subject to a penalty equivalent to one day's wages for each day the payment is late, up to 30 calendar days. Cal. Lab. Code § 203(a). This claim is subject to a three-year limitations periods. Cal. Lab. Code § 203(b); *Murphy, supra,* 40 Cal 4th at 1099.

30. Plaintiff alleges that Adecco "intentionally and willfully" failed to timely pay final wages to class members it no longer employs. First Amended Compl. ¶ 67. Plaintiff seeks for herself and the putative class members waiting time penalties in the form a continuation of their wages for up to 30 days pursuant to Labor Code section 203. *Id.* ¶¶ 69-70. The relevant time period for determining the amount-in-controversy arising from this claim is August 18, 2012 to the present. Adecco's records show an estimated 882 non-exempt employees who were assigned to work as GSX Store Operators had a voluntary or involuntary termination status during this time period. Willis Decl. ¶ 12. Their average final rate of pay was an estimated $16.00. *Id.* Accepting as true the allegations of the First Amended Complaint, and assuming that these employees were owed either unpaid wages, reporting time pay or missed rest period premium pay for at least one day at the time they ceased working for Adecco, the amount-in-controversy for Plaintiff's waiting time penalty claim is estimated to be $3,386,880 exclusive of interest. This estimate was derived by multiplying the $16.00 average final rate of pay for these 882 employees by eight hours per day worked by 30 calendar days.

*Id.  See Jones v. Tween Brands, Inc.*, 2014 WL 1607636, *3 (C.D. Cal., Apr. 22, 2014) (court used the 30 days to calculate the waiting time penalties because the plaintiff alleged that "class members were owed waiting time penalties 'up to the 30 day maximum'.") (*citing to Coleman v. Estes Express Lines, Inc.,* 730 F.Supp.2d 1141, 1150 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking the complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate.")); *see also Rippee*, *supra*, 408 F. Supp. 2d at 983-85 (in determining the amount in controversy in a wage-and-hour class action removed from state court pursuant to the CAFA, the court focused on the lawsuit's "big ticket" claims, *i.e.,* waiting-time penalty allegations under California Labor Code section 203, and using defendants' calculations, the court observed that the potential value of the plaintiff's waiting-time penalty claim could be calculated by multiplying the number of former employees in the proposed class by thirty days' wages).

31. Thus, accepting Plaintiff's allegations as true—and without even factoring in Plaintiff's requests for damages for restitution (First Amended Compl. ¶¶ 71-77; Prayer for Relief ¶¶ 21-25)—the potential amount in controversy in the State Court Action before attorneys' fees is conservatively estimated at $4,246,346 ($151,223 for unpaid wages + $114,390 reporting time pay + $593,853 for premium compensation for missed rest periods + $3,386,880 for waiting-time penalties = $4,246,346).[1]  The $4,246,346 amount is very conservative given Plaintiff's allegation that Adecco employed a "uniform policy and systematic

---

[1] The calculations contained herein are all premised on the assumption, solely for purposes of establishing jurisdiction, that Plaintiff's allegations are true.  Adecco expressly denies each of Plaintiff's allegations, denies that this action is appropriate for class certification, denies liability to Plaintiff and the purported class members on the theories alleged in the Complaint, and denies that Plaintiff can recover attorneys' fees for certain causes of action as alleged in his Complaint.  These denials do not, however, change the fact that Plaintiff's allegations have placed the requisite amount in controversy to trigger federal jurisdiction.

1  scheme" of unlawful practices.  First Amended Compl. ¶ 21.  It also does not
2  include attorneys' fees, which would further increase the amount that Plaintiff has
3  placed in controversy.

4      32.  If attorneys' fees are recoverable by statute or contract, the fee claim
5  is included in the amount in controversy regardless of whether the award is
6  mandatory or discretionary.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56
7  (9th Cir. 1998)).  Plaintiff seeks reasonable attorney's fees and costs recoverable
8  by law.  First Amended Compl., Prayer for Relief, ¶¶ 8, 24.  A review of class
9  action litigation shows that courts have historically awarded fees ranging from 20
10 to 50 percent, depending upon the circumstances of the case.  *See e.g., Morales v.
11 Stevco, Inc.*, 2012 WL 1790371, *16 (E.D. Cal., May 16 2012) (awarding 25% in
12 attorneys' fees) (*citing to Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268,
13 272-73 (9th Cir. 1989) (district court should take note that "25 percent has been a
14 proper benchmark figure"); *see also Wren v. RGIS Inventory Specialists*, 2011 WL
15 1230826, *29 (N.D. Cal., Apr. 1, 2011) (awarding 42% in attorneys' fees).  Thus,
16 it would not be unreasonable to include an additional $1,061,586 to the estimated
17 amount in controversy for attorneys' fees ($4,246,346 x 25% = $1,061,586).

18     33.  Thus, the amount in controversy can be conservatively estimated as
19 exceeding $5,000,000 ($4,246,346 estimated for wage claims + $1,061,586
20 estimated for attorneys' fees = $5,307,932).  Adecco has properly established, by a
21 preponderance of the evidence, that the jurisdictional amount-in-controversy
22 requirement is satisfied here.  *See Abrego Abrego, supra,* 443 F.3d at 683 (where
23 the plaintiff fails to plead a specific amount of damages, the defendant seeking
24 removal must show "by a preponderance of the evidence that the amount in
25 controversy requirement has been met.").  Moreover, the legislative history behind
26 the CAFA makes clear that any doubts regarding the maintenance of federal
27 jurisdiction over class actions in cases where the existence of diversity jurisdiction
28 is alleged should be resolved in favor of exercising federal jurisdiction.  S. Rep.

1  No. 109-14, at *42, as reprinted in 2005 U.S.C.C.A.N. 3, **40, 109 S. Rpt. 14 ("if
2  a federal court is uncertain about whether 'all matters in controversy' in a
3  purported class action 'do not in the aggregate exceed the sum or value of
4  $5,000,000,' the court should err in favor of exercising jurisdiction over class
5  actions.  Its provisions should be read broadly, with a strong preference that
6  interstate class actions should be heard in a federal court if properly removed by
7  any defendant."); *see also In re Textainer, supra*, 2005 U.S. Dist. LEXIS 26711,
8  *10.

9  34.  To the extent Plaintiff has alleged any other claims for relief in the
10 Complaint over which this Court would not have original jurisdiction under 28
11 U.S.C. § 1332(d), the Court has supplemental jurisdiction over any such claims
12 pursuant to 28 U.S.C. § 1367(a).

13 35.  The United States District Court for the Northern District of
14 California embraces the county and court in which the State Court Action is now
15 pending.  28 U.S.C. § 84(a).  Therefore, this State Court Action is properly
16 removed to this Court pursuant to 28 U.S.C. § 1441(a).

17 Defendant will promptly serve Plaintiff and all other parties with this Notice
18 of Removal, and will promptly file a copy of this Notice of Removal with the clerk
19 of the state court in which the Action is now pending, as required by 28 U.S.C. §
20 1446(d).

Dated:  November 6, 2015

**BRYAN CAVE LLP**
Julie E. Patterson
Julie W. O'Dell

By:  */s/ Julie E. Patterson*
Julie E. Patterson
Attorneys for Defendant
ADECCO USA, INC.