UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAITLYN SHEPARDSON,<br><br>        Plaintiff,<br><br>    v.<br><br>ADECCO USA, INC.,<br><br>        Defendant. | Case No. 15-cv-05102-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Docket No. 14 |

## I.   INTRODUCTION

Plaintiff Kaitlyn Shepardson filed this class action lawsuit in state court against Defendant Adecco USA, Inc., asserting various wage and rest break violations, unfair business practices, and California Private Attorney General Act of 2004 ("PAGA") penalty claims. On November 6, 2015, Adecco removed this putative class action lawsuit under the Class Action Fairness Act of 2005 ("CAFA"). Adecco then filed the instant motion to compel arbitration of all of Plaintiff's claims pursuant to an arbitration agreement (the "Agreement") that Plaintiff signed after she was hired. The parties dispute whether the class action waiver and the PAGA waiver in the Agreement are valid and enforceable.

Having considered the parties' briefs, accompanying exhibits and oral arguments, the Court hereby **GRANTS** Adecco's motion to compel Plaintiff's claims to arbitration except for Plaintiff's PAGA claims, which will remain before this Court. However, the Court will stay the PAGA claims pending the outcome of arbitration.

## II.   BACKGROUND

Defendant, Adecco USA, Inc., is one of the largest staffing companies in the United States with headquarters in Jacksonville, Florida and branches and offices in forty-seven states, including

California. Docket No. 14–2 (Prentiss Decl.) ¶ 1. Adecco provides recruitment and staffing solutions to its clients as well as placement of temporary employees ("associates") at its clients' sites. *Id.* Plaintiff, Kaitlyn Shepardson, was an associate for Adecco and was placed at Google, an Adecco client, in the temporary positions of GSX Store Operator and Google Shopping Express Operator from approximately August 2013 to April 2015. *Id.* ¶ 4–5.

On August 18, 2015, Plaintiff filed her complaint in state court asserting claims for failure to pay minimum wages, failure to provide rest periods or rest period premiums, failure to pay wages on termination, unfair business practices, and PAGA penalties. Mot. at 7; Docket No. 1–1 (Compl.) ¶¶ 43–80. Plaintiff brings claims asserting these violations on behalf of herself and a class of similarly situated members who performed services for Adecco's clients in California within four years prior to the filing of the complaint. Compl. ¶¶ 12, 18. Adecco then removed this putative class action lawsuit under CAFA. Docket No. 1.

On February 2, 2016, Adecco filed the instant motion to compel arbitration of Plaintiff's claims pursuant to a "Dispute Resolution and Arbitration Agreement for Consultants/Associates" ("Agreement") that Plaintiff signed as part of the "on-boarding" process to begin employment with Adecco. Mot. at 12. The Agreement provides that "the Company and Employee agree that any and all disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the parties, or the termination of the employment relationship, shall be resolved by binding arbitration . . . ." Docket No. 14–1 (Patterson Decl.) Exh. A (Agreement) at ¶ 1. In bold and capitalized font, the first paragraph ends: "By signing this agreement, the parties hereby waive their right to have any dispute, claim or controversy decided by a judge or jury in a court." *Id.* at ¶ 1. In regard to the more specific issues in front of this Court, Paragraphs 7 and 8 of the Agreement provide:

> **7. BY SIGNING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS AND/OR COLLECTIVE PROCEEDING.**

2

**8. FURTHERMORE, BY SIGNING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT IN ANY REPRESENTATIVE PROCEEDING UNDER ANY PRIVATE ATTORNEY GENERAL STATUTE ("PAGA CLAIM"), UNLESS APPLICABLE LAW REQUIRES OTHERWISE. IF THE PRECEDING SENTENCE IS DETERMINED TO BE UNENFORCEABLE, THEN THE PAGA CLAIM SHALL BE LITIGATED IN A CIVIL COURT OF COMPETENT JURISDICTION AND ALL REMAINING CLAIMS WILL PROCEED IN ARBITRATION.**

*Id.* at ¶¶ 7–8.

However, within thirty days of signing the Agreement, associates may opt out by signing and dating an Agreement Opt Out Form that can be obtained from Adecco's Human Resources Department. *Id.* at ¶ 9. "An Employee who opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision . . . ." *Id.* If the associate does not opt out of the Agreement in a timely manner, then the associate and Adecco are deemed to have mutually accepted the Agreement. *Id.*

The uncontroverted facts show that Plaintiff signed her E-Signature Agreement via US Verify, Adecco's employee on-boarding tool, on August 16, 2013 and electronically signed her on-boarding documents, including the Agreement, that same day. Prentiss Decl. at ¶¶ 5–7, 13; *see also id.* at exhs. A, B, C. Adecco never received any request by Plaintiff asking for the Agreement Opt Out Form, and has no record of a signed and executed Agreement Opt Out Form from Plaintiff or in her US Verify file. *Id.* at ¶ 15.

### III. DISCUSSION

The Federal Arbitration Act ("FAA") governs the enforceability and scope of arbitration agreements. 9 U.S.C. §§ 1–307. "[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). The FAA reflects both a "'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *Concepcion*, 563 U.S. at 339 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and *Rent–A–*

3

*Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). The FAA also contains a savings clause, which provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The generally applicable contract defenses include fraud, duress, or unconscionability, but not defenses that, *e.g.*, apply only to arbitration. *Concepcion*, 563 U.S. at 339; *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

In order to rule on a motion to compel arbitration, a district court must decide "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the response is affirmative on both counts, then [absent application of the savings clause] the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* When deciding a motion to compel arbitration, a district court must also "treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Chavez v. Bank of Am.*, No. C 10-653 JCS, 2011 WL 4712204, at *3 (N.D. Cal. Oct. 7, 2011). Lastly, courts apply federal substantive law to questions regarding the interpretation and enforceability of arbitration agreements, and state contract law to questions concerning whether the parties agreed to arbitrate. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22–24; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

A.   The Agreement is Valid

As an initial matter, the Court finds that there is a valid agreement between the parties to arbitrate Plaintiff's claims. Under California law, the party seeking to compel arbitration "bears the burden of proving its existence by a preponderance of the evidence." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996). Here, Plaintiff does not dispute that the Agreement is valid. Docket No. 16 (Opp.) at 4. Plaintiff electronically signed the Agreement via US Verify on August 16, 2013 (Prentiss Decl. at ¶ 7; Prentiss Decl. Exhs. A, B); Adecco did not receive any notification from Plaintiff requesting an Agreement Opt Out Form (Prentiss Decl. at ¶ 15); and Adecco has no record of a signed Agreement Opt Out Form from Plaintiff and none exists in her

4

US Verify file (Prentiss Decl. at ¶ 15). Accordingly, the Court finds that a valid agreement to arbitrate exists between the parties.

The Court also finds that Plaintiff's claims fall within the scope of the Agreement because all of her claims arise out of "the employment relationship between the parties" and "the termination of the employment relationship." Agreement at ¶ 1; *see also* Compl. at ¶¶ 43–80 (alleging claims for minimum wages, failure to provide rest periods or rest period premiums, failure to pay wages on termination, and unfair business practices).

B.   Enforceability of the Terms

Plaintiff does not allege that the Agreement itself is procedurally or substantively unconscionable. Rather, she argues that the Agreement is unenforceable because it contains a class action waiver, which she contends violates Section 7 of the National Labor Relations Act ("NLRA"). Opp. at 4. She also asserts that the FAA does not preempt California's rule against PAGA waivers and must go forward as a PAGA representative action. *Id.* The Court therefore addresses those two issues.[1]

1.   The Class Action Waiver is Valid and Enforceable

The parties dispute whether the ban on class actions violates the NLRA. Mot. at 15–16; Opp. at 5–6. Plaintiff asserts that the class action waiver violates Section 7 of the NLRA by depriving employees of their substantive federal right "to engage in concerted employee activities."[2] Opp. at 5–6. However, for the reasons stated below, the NLRA does not apply here because Plaintiff signed a voluntary arbitration agreement with the opportunity to opt out, and thus elected to arbitrate her employment-related disputes on an individual basis.

In *In re D.R. Horton, Inc.*, the National Labor Relations Board ("NLRB"), an independent federal agency that adjudicates unfair labor practice cases, found that *mandatory arbitration*

---

[1] The parties do not dispute that the Court has authority to determine the validity of the arbitration clause at issue in this case; Defendant does not, for example, argue that there is a clear and unmistakable delegation clause.

[2] Plaintiff also argued that the FAA did not apply to the Agreement's arbitration provision because the Agreement was not connected to interstate commerce, citing a recent California Court of Appeal decision decided on February 26, 2016, *Carbajal v. CWPSC, Inc.*, 2016 WL 757552 in support. However, because Plaintiff did not assert this argument until the hearing, the Court finds the argument waived.

5

1  *agreements* barring employees from bringing class action claims restrict substantive rights under
2  Sections 7 and 8(a)(1) of the NLRA.  357 N.L.R.B. No. 184, 5–8 (Jan. 3, 2012) ("*Horton I*")
3  (emphasis added); *see Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1077 (N.D. Cal. 2015).
4  The NLRB articulated that it is well-settled law that the NLRA protects the rights of employees to
5  improve their working conditions through litigation in administrative and judicial forums.  *Horton*
6  *I*, 357 N.L.R.B. No. 184 at 2.  Furthermore, the NLRB stated that "an individual who files a class
7  or collective action regarding wages, hours or working conditions, whether in court or before an
8  arbitrator, seeks to initiate or induce group action and is engaged in conduct protected by Section
9  7."  *Id.* at 4.  Because these kind of collective efforts "redress workplace wrongs or improve
10 workplace conditions," the NLRB found that such efforts are what Congress intended to protect by
11 adopting Section 7 of the NLRA.  *Id.*  The NLRB also determined that the rule against waiving the
12 right to bring a class action in employment agreements did not conflict with the purposes of the
13 FAA.  *Id.* at 11–16; *see Nanavati*, 99 F. Supp. 3d at 1077.  According to the NLRB, "the purpose
14 of the FAA was to prevent courts from treating arbitration agreements less favorably than other
15 private contracts."  *Horton I*, 357 N.L.R.B. No. 184 at 11; *see also Buckeye Check Cashing, Inc. v.*
16 *Cardegna,* 546 U.S. 440, 447 (2007).  However, finding that an arbitration agreement violates the
17 NLRA does not mean courts are treating that agreement less favorably – it simply violates federal
18 labor law.[3]  *Horton I*, 357 N.L.R.B. No. 184 at 11.  Therefore, the NLRB reasoned that when
19 private contracts interfere with the purposes of the NLRA, the NLRA prevails.  *Horton I*, 357
20 N.L.R.B. No. 184 at 11.  Additionally, regarding the arbitration of federal statutory claims,
21 arbitration agreements may not require a party to forgo a substantive right.  *Id.*  Notably, the
22 NLRB acknowledged that it did *not* decide whether *voluntary arbitration agreements* violated the
23 NLRA:

---

[3] "To find that an arbitration agreement must yield to the NLRA is to treat it no worse than any other private contract that conflicts with Federal labor law. The MAA [the "Mutual Arbitration Agreement" in dispute in *Horton I*] would equally violate the NLRA if it said nothing about arbitration, but merely required employees, as a condition of employment, to agree to pursue any claims in court against the Respondent solely on an individual basis." *Horton I,* 357 N.L.R.B No. 184 at 11.

> Moreover, we do not reach the more difficult question[ ] of . . . whether, if arbitration is a mutually beneficial means of dispute resolution, an employer can enter into an agreement that is not a condition of employment with an individual employee to resolve either a particular dispute or all potential employment disputes through non-class arbitration rather than litigation in court.

*Id.* at 16 n.28 (emphasis added); Reply at 8.

Most federal and state courts have not adopted the reasoning behind *Horton I*. *See Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013); *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 359 (5th Cir. 2013) ("*Horton II*") (NLRB's rule against waiving class actions does not fall within the section 2 savings clause of the FAA). While the Ninth Circuit has not decided whether mandatory arbitration agreements violate the NLRA, it has observed that a number of federal courts have not followed *Horton I* because it conflicts with the U.S. Supreme Court's pronouncements concerning the policies upholding the FAA); *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1075 n. 3 (9th Cir. 2013).

On the other hand, a district court has recently endorsed *Horton I*. In *Totten v. Kellogg Brown & Root, LLC*, No. ED CV 14-1766 DMG DTBX, 2016 WL 316019 (C.D. Cal. Jan. 22, 2016), Judge Gee extensively examined the lengthy line of cases addressing the enforceability of class action waivers and their relationship to the NLRA and the FAA. *Totten*, 2016 WL 316019 at *7–17. Judge Gee reasoned that requiring an employee to agree to an arbitration agreement, as a condition of employment, to not pursue any dispute on a class action basis interferes with the employee's substantive right to engage in concerted activity for the purpose of collective bargaining or other mutual aid or protection under the NLRA. *Totten*, 2016 WL 316019 at *16.

Ultimately, it is not necessary in the case at bar to determine the validity of *Horton I* and *Totten*. Neither *Horton I* or *Totten* involved an arbitration agreement with an opt out provision. *See Totten*, 2016 WL 316019 at *1 (noting that Totten, the employee, "signed an acknowledgment of and agreement to KBR's Dispute Resolution Program ("DRP") as a condition of his employment."). The ability to opt out is consequential.

In *Johnmohammadi v. Bloomingdales, Inc.*, the Ninth Circuit held that class action waivers are enforceable and not in violation of the NLRA if the employee freely entered into an arbitration

7

1 agreement. 755 F.3d 1072, 1077 (9th Cir. 2014). The plaintiff, a sales associate for
2 Bloomingdales, received a set of documents upon hiring, informing her that she agreed to resolve
3 all employment-related disputes through arbitration unless she decided to opt out of the agreement
4 by returning a form to the company within thirty days. *Id.* at 1074. She did not return the
5 Agreement Opt Out Form and became bound by the terms of the arbitration agreement. *Id.* The
6 plaintiff argued that the class action waiver was unenforceable because it violated her rights to
7 engage in "other concerted activities for the purpose of collective bargaining or other mutual aid
8 or protection" under Sections 7 and 8(a)(1) of the NLRA. *Id.* at 1074–75. The Ninth Circuit did
9 not decide whether filing a class action in order to enforce labor laws would be considered
10 "concerted activity" under the NLRA because "[t]o prevail, she must still show that
11 Bloomingdale's interfered with, restrained, or coerced her in the exercise of her right to file a class
12 action." *Id.* at 1075. The court found that Bloomingdale's did not interfere with, restrain, or
13 coerce the plaintiff because the company "did not require her to accept a class-action waiver as a
14 condition of employment, as was true in *In re D.R. Horton, Inc.* (citation omitted)." *Id.* at 1075.
15 Unlike in *Horton I*, the *Johnmohammadi* plaintiff had the right to opt out of the arbitration
16 agreement and thus had freely entered into the agreement with her employer.

17 In *Nanavati*, 99 F. Supp. 3d at 1079, the court similarly determined that *Horton I* was not
18 controlling because unlike in *Horton I*, there was a "lack of coercion in the employee's agreement
19 (through failure to opt out) to arbitrate." *Nanavati*, 99 F. Supp. 3d at 1078. Judge Henderson has
20 noted:

> While *Totten* contains an interesting discussion of class action waivers, public policy concerns with arbitration in the employment context, and authority interpreting *Horton I*, the arbitration agreement at issue in *Totten* (and also in *Horton I*) did not have an opt out provision; thus the facts are not analogous to this case. The Court finds *Johnmohammadi v. Bloomingdales, Inc.*, 755 F.3d 1072, 1077 (9th Cir. 2014), to be more useful in its analysis, as the Ninth Circuit directly addressed opt out provisions in class action waivers.

27 *Gerton v. Fortiss, LLC*, No. 15-CV-04805-TEH, 2016 WL 613011, at 4 n.4 (N.D. Cal. Feb. 16,
28 2016).

8

1  Here, Plaintiff was afforded an ample opportunity to opt out, but chose not to. Plaintiff
2  does not contend she was not aware of the opt out rights. If Plaintiff wanted to retain the right to
3  file a class action in court, nothing precluded her from opting out of the Agreement. At the
4  hearing, Plaintiff asserted that the series of events during the hiring period indicated a coercive
5  relationship between Plaintiff and Adecco. Plaintiff argued that the following language in the
6  Agreement's "Recitals" demonstrates that Plaintiff was compelled to sign the Agreement in order
7  to be considered for continued placements at her work sites:

> A. The Company desires to consider Employee for placement or the continuation of Employee on temporary work assignments at Company's client(s) ("Client(s));
> B. Employee is desirous of such consideration or continued assignment.

Agreement at ¶ A, B. However, Adecco gave Plaintiff thirty days to opt out of the Agreement, and there is no evidence that this process was coercive. In fact, the Agreement states, "An Employee who opts out as provided in this paragraph will *not* be subject to any adverse employment action as a consequence of that decision . . . ." Agreement at ¶ 9 (emphasis added).

Thus, per *Johnmohammadi*, the class action waiver in the Agreement is not an unlawful restraint on Plaintiff's right to engage in concerted activity under Section 7 of the NLRA and is enforceable because Plaintiff was given the opportunity to opt out. *See Johnmohammadi*, 755 F.3d at 1077. Defendant's motion to compel Plaintiff's claims for failure to pay minimum wages, failure to provide rest periods or rest period premiums, failure to pay wages on termination, and unfair business practices to arbitration is **GRANTED**.

C.   The PAGA Waiver is Not Enforceable

   1.   Representative PAGA Claims Cannot be Waived Outright

The parties dispute the enforceability of the representative PAGA waiver in the Agreement. The Agreement states in bold and capitalized font:

> **FURTHERMORE, BY SIGNING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT IN ANY REPRESENTATIVE**

9

**PROCEEDING UNDER ANY PRIVATE ATTORNEY GENERAL STATUTE ("PAGA CLAIM"), UNLESS APPLICABLE LAW REQUIRES OTHERWISE.  IF THE PRECEDING SENTENCE IS DETERMINED TO BE UNENFORCEABLE, THEN THE PAGA CLAIM SHALL BE LITIGATED IN A CIVIL COURT OF COMPETENT JURISDICTION AND ALL REMAINING CLAIMS WILL PROCEED IN ARBITRATION.**

Agreement at ¶ 8.  Adecco argues that the Agreement expressly provides for a waiver of representative PAGA claims.  Mot. at 17.  Plaintiff counters that the PAGA waiver is not enforceable under California law.  Opp. at 6.  Both parties agree that the case law on this issue is settled at the moment as the Ninth Circuit in *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425 (9th Cir. 2015) recently adopted the California Supreme Court's holding in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014). Opp. at 6; Mot. at 17.

The Supreme Court of California in *Iskanian* decided that employment agreements requiring employees to waive their right to bring PAGA claims before a potential dispute arises is contrary to public policy and thereby not enforceable.  59 Cal. 4th at 383.  In *Sakkab*, the Ninth Circuit found *Iskanian* barred the waiver of representative claims under PAGA and held that such bar "does not stand as an obstacle to the accomplishment of the FAA's objectives, and is not preempted" by the FAA.  803 F.3d at 427.  *Sakkab* found that the *Iskanian* rule falls within the ambit of the FAA's section 2 savings clause because it is a ground for the revocation of any contract and does not conflict with the purposes of the FAA.  *Id.* at 433; *see also Cobarruviaz v. Maplebear, Inc.*, No. 15-CV-00697-EMC, 2015 WL 6694112, at *11 (N.D. Cal. Nov. 3, 2015) (expressing that representative PAGA claims are not waivable per *Sakkab*); *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2015 WL 8587879, at *7 (N.D. Cal. Dec. 10, 2015) (noting that *Sakkab* held that the *Iskanian* rule is a "generally applicable" contract defense not preempted by the FAA).

Because *Sakkab* makes clear that representative PAGA claims may not be waived outright, the representative action waiver in the Agreement as applied to Plaintiff's PAGA claims is unenforceable.

    2.    <u>Severability of the PAGA Waiver</u>

However, the Court finds that the PAGA waiver is severable.  Plaintiff has not argued that

1    the PAGA waiver contained in the Agreement renders the entire arbitration agreement void.  The

2    PAGA waiver in the Agreement is clear that in the event that the Court were to find the first

3    sentence of Paragraph 8 not enforceable, "then the PAGA claim shall be litigated in a civil court of

4    competent jurisdiction and all remaining claims will proceed in arbitration."  Agreement at ¶ 8.

5    Furthermore, the Agreement also states in Paragraph 14 that:

> [i]f any provision(s) of this Dispute Resolution Agreement is declared overbroad, invalid or unenforceable such provision(s) shall be severed from this Dispute Resolution Agreement and, the remaining provisions of this Dispute Resolution Agreement shall remain in full force and effect and shall be construed in a fashion which gives meaning to all of the other terms of this Dispute Resolution Agreement.

Agreement at ¶ 14.  Therefore, pursuant to the Agreement's terms, Plaintiff's representative PAGA claims are severable from the Agreement and will remain before this Court.

### 3.  The PAGA Claims Will be Stayed

Adecco requests that the Court stay Plaintiff's PAGA claims pending the outcome of the arbitration.  Mot. at 17.  Plaintiff makes no argument to the contrary.  Under 9 U.S.C. § 3, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  *See also Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1057 (9th Cir. 2013).  The Court has discretion either to proceed with the nonarbitrable claims or to stay litigation of all claims pending the outcome of the arbitration under 9 U.S.C. § 3.  *See United States for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1426 (9th Cir. 1985).  "In *Leone,* the Court explained that where the factual allegations underlying the arbitrable and nonarbitrable claims are identical, a stay may be warranted by considerations of judicial economy and convenience because a plaintiff's success at arbitration may render litigation of the nonarbitrable claims unnecessary."  *Gilmore v. Shearson/Am. Exp., Inc.*, 668 F. Supp. 314, 321, n.11 (S.D.N.Y. 1987) (referring to *Leone v. Advest, Inc.*, 624 F. Supp. 297, 303 (S.D.N.Y. 1985), *abrogated on other grounds*, *Rubashkin v. Philips, Appel & Waldren Inc.*, 722 F. Supp. 1135 (S.D.N.Y. 1989)).  Here, while the remaining claim (PAGA) is not identical to the claims sent to arbitration (minimum wage, rest period, wages

on termination, and unfair business practices claims), the factual allegations underlying them are the same (*i.e.* the employment dispute/relationship).  Thus, the Court may stay PAGA claims pending the outcome of arbitration of a plaintiff's individual claims.  *See Cobarruviaz*, 2015 WL 6694112, at *9 ("However, the Court will grant Instacart's request to stay this litigation, including the PAGA representative claim, pending the outcome of the arbitration."); *see also Jacobson*, 2015 WL 8293164, at *6 (granting defendant's motion to compel arbitration on all individual claims while staying the representative PAGA claim remaining before the court pending completion of the arbitration).  Plaintiff's PAGA claims are derivative in nature of her substantive claims that will proceed to arbitration, and the outcome of the nonarbitrable PAGA claims will depend upon the arbitrator's decision.  *See Benson Pump Co. v. S. Cent. Pool Supply, Inc.*, 325 F. Supp. 2d 1152, 1160 (D. Nev. 2004).  The Court finds such a stay appropriate here.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Adecco's motion to compel Plaintiff's claims for failure to pay minimum wages, failure to provide rest periods or rest period premiums, failure to pay wages on termination, and unfair business practices to arbitration.  The Court **DENIES** Adecco's motion to compel Plaintiff's representative PAGA claims to arbitration, but will stay the PAGA claims pending the outcome of the arbitration.

This order disposes of Docket No. 14.

**IT IS SO ORDERED**.

Dated: April 5, 2016

_____
EDWARD M. CHEN
United States District Judge